TUCKER MANUFACTURING COMPANY *vs.* DAVID P. FAIRBANKS
& others.

A bill of exchange drawn on the P. Insurance Company by their agents F. & Co., and ending thus: "charge the same to account of F. & Co., Agts. P. Ins. Co.," binds F. & Co. personally as drawers, although delivered by the insurance company to the payee in payment of a loss on one of their policies; and cannot be shown by parol evidence not to have been expected or intended by the parties to create a debt against any one but the company.

In an action by the payee against a copartnership as drawers of a bill of exchange on a corporation established in Maine of which they were general agents in Massachusetts, evidence that at the time of its execution one of them told the plaintiff that it would be paid in Boston and asked him to keep it there and not send it to Maine for collection, and before it became due told him that it would not be paid at maturity but he hoped it would be paid eventually, and that on the last day of grace the defendants were informed by the plaintiff that it was in a certain bank in Boston, and one of them answered that it would not be paid, is sufficient to warrant a finding that they waived due presentment and notice.

CONTRACT against David Fairbanks & Co as drawers of the follow'ng bill of exchange : " Boston, March 23, 1866. $4,469.76.

Two months after date pay to the order of Messrs. Hiram Tucker & Co. four thousand four hundred and sixty-nine $\frac{76}{100}$ dollars, value received, and charge the same to account of

"David Fairbanks & Co.,
    "Agts. Piscataqua F. & M. Ins. Co.
"To Piscataqua F. & M. Ins. Co., So. Berwick, Me."

Across the face of the draft was written, "Accepted for the Treasurer, David Fairbanks, President;" and on the back, "Payable in Boston, Hiram Tucker & Co."

Trial by jury was waived, and the case heard by *Foster, J.,* who found the following facts: The signatures of all the parties to the bill were proved or admitted. It was actually made and delivered to the officers of the plaintiff corporation, and accepted by them on the 3d of April 1866, in payment and satisfaction of the amount of a loss by fire, due on a policy of insurance effected by Hiram Tucker & Co. in the Piscataqua Fire and Marine Insurance Company, which had been ascertained on the 23d of March, and was payable sixty days afterwards, and had been assigned by Hiram Tucker & Co. to the plaintiffs on the 26th of March. The plaintiffs had full knowledge of all the circumstances under which the bill was made. The insurance company, at the time of delivering it, took from the plaintiffs' treasurer this receipt: "Piscataqua Fire and Marine Ins. Co., Treasurer's Office, So. Berwick, Me., April 3, 1866. $4,469.76. Received of the Piscataqua Fire and Marine Insurance Company forty-four hundred and sixty-nine and $\frac{76}{100}$ dollars, in full for loss and damage to my property by fire on the 19th of March 1866, insured by policy No. 16,907 in said company. Tucker Manufacturing Co.            R. S. Fay, Treas."

No evidence was offered of any fraud attending the making of the bill. The defendants offered parol evidence tending to show that it was not expected or intended that they should be liable on the bill, that it was given only to settle the loss, and was supposed and expected by both parties to create a debt against no one but the insurance company. But the judge excluded such evidence, and held that the question of the defendants' liability must be determined by the instrument itself.

The insurance company were a corporation established by the laws of Maine, having their office at South Berwick in that state. The bill was never presented to them there for acceptance, and no regular notice of its nonpayment was given to the defendants. The defendants had no funds in the hands of the insurance company when the bill was made or ever afterwards. It was proved that the draft was made and delivered in Boston at the office of the defendants, who were the general agents of the insurance company, and one of them, David Fairbanks, its president, and the agent appointed to receive service of process in Massachusetts, under the Gen. Sts. *c.* 58, § 68; that at the time of its execution one of the defendants was asked where it would be paid, and replied " in Boston," and requested the plaintiff to keep it there and not send it to Maine for collection ; that before it came due one of the defendants told the plaintiff that it would not be paid at maturity, but he hoped it would be paid eventually ; that on the last day of grace the defendants were informed by the plaintiff that it was in the Union Bank in Boston, and one of them answered that it would not be paid.

Upon these facts the presiding judge found that due presentment and notice had been waived by the defendants ; and reserved the questions, whether the facts warranted this finding, whether the defendants were liable personally as drawers on the face of the bill, and whether the parol evidence offered by them should have been received, for the consideration of the full court, according to whose opinion judgment was to be entered for the plaintiff, or for the defendant, or a new trial ordered.

*C. Browne,* for the plaintiffs.

*H. A. Scudder,* for the defendants.

GRAY, J. 1. The facts proved at the trial were amply sufficient to warrant the finding that presentment for acceptance and notice of nonpayment had been waived. The defendants knew that the bill would not be paid at maturity, and so informed the plaintiffs ; and the plaintiffs had the right to rely upon the information so received and omit a useless ceremony which could be of no benefit to themselves or to the defendants. *Brett* v. *Levett,* 13 East, 213. *Barker* v. *Parker,* 6 Pick. 80 *Spencer* v. *Harvey,* 17 Wend. 489.

2. It is equally clear that the liability of the defendants as drawers of a negotiable instrument must be determined from the instrument itself. This is too well settled to admit of discussion. There is no distinction in this respect between the drawer of a bill of exchange and the maker of a promissory note. *Bank of British North America* v. *Hooper*, 5 Gray, 567. *Bass* v. *O'Brien*, 12 Gray, 481. *Slawson* v. *Loring*, 5 Allen, 342. *Barlow* v. *Congregational Society in Lee*, 8 Allen, 460. *Arnold* v. *Sprague*, 34 Verm. 402. Met. Con. 108.

3. The question whether the defendants are liable upon the face of the bill requires more consideration. The difficulty is not in ascertaining the general principles which must govern cases of this nature, but in applying them to the different forms and shades of expression in particular instruments. In order to exempt an agent from liability upon an instrument executed by him within the scope of his agency, he must not only name his principal, but he must express by some form of words that the writing is the act of the principal, though done by the hand of the agent. If he expresses this, the principal is bound, and the agent is not. But a mere description of the general relation or office which the person signing the paper holds to another person or to a corporation, without indicating that the particular signature is made in the execution of the office and agency, is not sufficient to charge the principal or to exempt the agent from personal liability. Amid the great variety of language which may be used by merchants in haste or thoughtlessness, ignorant or unmindful of legal rules, or not anticipating the importance of holding one party rather than the other responsible, it must often happen that cases fall very near the dividing line; and, in order to maintain uniformity of decision, it is necessary for the court to refer to the cases already adjudicated, especially within its own jurisdiction.

The authority which at first sight seems most strongly to support the position of the defendants is that of *Ballou* v *Talbot*, 16 Mass. 461, in which a note signed " Joseph Talbot, agent for David Perry," was held not to bind Talbot personally That case has since been recognized and followed in this Com

monwealth. *Jefts* v. *York*, 4 Cush. 372. *Page* v. *Wight*, 14 Allen, 182. But the important and effective word in *Ballou* v. *Talbot* was not the word " agent," nor the name of the principal, but the connecting word " for," which might indeed indicate merely the relation which the agent held to the principal ; but which was equally apt to express the fact that the act was done in behalf of the principal, in the same manner as if the words had been transposed thus : " For David Perry, Joseph Talbot, agent." See *Deslandes* v. *Gregory*, 2 El. & El. 602. This is made manifest by considering that if the word " agent " had been wholly omitted, and the form of the signature had been simply " Joseph Talbot, for David Perry," or " For David Perry, Joseph Talbot," it would have been well executed as the contract of the principal, even if it had been under seal, and of course not less so in the case of a simple contract. *Long* v. *Colburn*, 11 Mass. 97. *Emerson* v. *Providence Hat Manufacturing Co.* 12 Mass. 237. *Mussey* v. *Scott*, 7 Cush. 215. Met. Con. 105, 110.

On the other hand, in *Hills* v. *Bannister*, 8 Cowen, 31, a note signed by two persons, with the addition " Trustees of Union Religious Society, Phelps," (who were a legal corporation,) was held to bind the signers personally ; and in *Barker* v. *Mechanic Insurance Co.* 3 Wend. 94, a note signed " John Franklin, President of the Mechanic Fire Insurance Company," was held on demurrer not to be the note of the company, although alleged to have been made within the authority of the president and the scope of the legitimate business of the corporation ; the court saying : " In this case, there is an averment that the president was lawfully authorized ; but it does not appear that he acted under that authority ; he does not say that he signs *for the company ;* he describes himself as president of the company, but to conclude the company by his acts he should have contracted in their name, or at least on their behalf." The variation between the words " for " and " of " seems at first view slight ; but in the connection in which they are used in signatures of this kind the difference is substantial. " Agent of " or " president of " a corporation named simply designates a personal relation

of the individual to the corporation. " Agent for " a particulaı person or corporation may designate either the general relation which the person signing holds to another party, or that the particular act in question is done in behalf of and as the very contract of that other ; and the court, if such is manifestly the intention of the parties, may construe the words in the latter sense. But even " agent for " has been held under some circumstances a mere *descriptio personæ* of the agent, as in *De Witt* v. *Walton,* 5 Selden, 570, in which the name following these words was not the proper name of the principal, but the name of a newspaper which the agent carried on in the principal's behalf, and a note signed " David Hoyt, agent for The Churchman," was held to be the note of Hoyt and not of his principal ; and in *Shattuck* v. *Eastman,* 12 Allen, 369, in which it was held that a paper in the form of a receipt, signed " Robert Eastman, Agent for Ward 6, Lowell, Mass.," if executed under such circumstances as to amount to a contract, might be binding on the agent personally. In *Fiske* v. *Eldridge,* 12 Gray, 474, in a careful review of the cases by Mr. Justice Dewey, the New York decisions above mentioned were quoted with approval, and a note signed " John T. Eldridge, Trustee of Sullivan Railroad," was held to be the personal note of Eldridge. In *Haverhill Insurance Co.* v. *Newhall,* 1 Allen, 130, a note signed " Cheever Newhall, President of the Dorchester Avenue Railroad Company," was held to bind Newhall personally, although given by him to an insurance company (a's was expressed in the note itself) in consideration of a policy issued to the railroad corporation, which he was in fact authorized to obtain and sign the note for. See also *Fullam* v. *West Brookfield,* 9 Allen, 1 ; *Morell* v. *Codding,* 4 Allen, 403 ; *Tanner* v. *Christian,* 4 El. & Bl. 591 ; *Parker* v. *Winslow,* 7 El. & Bl. 942 ; *Price* v. *Taylor,* 5 H. & N. 540 ; *Bottomley* v. *Fisher,* 1 H. & C. 211.

This case is not distinguishable from those just stated. It differs from *Ballou* v. *Talbot,* in omitting the word " for," (the ɔnly evidence, contained in the note there sued on, that it was made in behalf of the principal,) leaving the words " Agts. Pis-

cataqua F. & M. Ins. Co." as a mere description of the persons signing this bill. The cases of *Mann* v. *Chandler*, 9 Mass. 335, *Despatch Line of Packets* v. *Bellamy Mannfacturing Co.* 12 N. H. 205, and *Johnson* v. *Smith*, 21 Conn. 627, cannot avail the defendants against the later decisions of this court. See 12 Gray, 476 ; 8 Allen, 461, 462. The name of the principal does not appear in the body of the bill. The address of the bill to the corporation and the request to them to charge the amount to the account of the drawers have certainly no tendency to show that the drawers are the same as the corporation, the drawees. The fact that the bill was delivered to the plaintiffs by the insurance company, as shown by the contemporaneous receipt, does not make it the less the promise of the signers. The defendants must therefore be held personally responsible as the drawers of the bill.         *Judgment for the plaintiffs.*